A98A2288. MILLS v. BERLEX LABORATORIES, INC.

(510 SE2d 621)

McMURRAY, Presiding Judge.

William Mills sued his former employer, Berlex Laboratories, Inc. ("Berlex"), alleging it wrongfully refused to provide him with short-term disability benefits after the termination of his employment. Berlex defended the suit by asserting Mills' claim was barred by a Separation Agreement and General Release. Following a bench

trial, the trial court concluded the release prohibited Mills' lawsuit and found in favor of Berlex. The evidence at trial revealed the following:

On February 15, 1995, Berlex informed Mills that his position as a pharmaceutical sales representative was being eliminated and that he would be terminated effective February 28, 1995. In this same meeting, Berlex's representatives gave Mills a proposed Separation Agreement and General Release and advised him to consult with an attorney before signing it.

While boxing up Berlex supplies located in his home office at the request of Berlex, Mills injured his back. During the week of February 20, 1995, Mills experienced back spasms and requested a short-term disability form from Toni Dolecki in Berlex's Human Resources Department. On February 22, 1995, Dolecki sent Mills a memo outlining the procedures for making a claim for short-term disability benefits. She also enclosed a short-term disability claim form which needed to be completed by Mills' physician and instructed Mills to return it immediately. Mills' physician examined him on February 28, 1995, and completed the disability form. This form was mailed to Dolecki by Mills' attorney, Samuel Cruse, on March 3, 1995. At trial, a Berlex representative testified that Mills' benefits file did not include this form or any claim for short-term disability benefits.

After retaining Cruse to review the release and negotiate with Berlex on his behalf, Mills signed a revised Separation Agreement and General Release in Cruse's office. This release provides: "Employee agrees that other than as specifically set forth in this Separation Agreement, he is not due any compensation . . . and as of the day following the Termination Date [February 28, 1995], he will not be eligible to participate in any of Berlex's benefits plans, including without limitation, the retirement, employee savings and bonus plans. Notwithstanding the foregoing, employee shall retain such rights as are provided to former employees in the Berlex Retirement Income Plan and Berlex Retirement Savings Plan."

This release further provides: "As a material inducement to enter into this Separation Agreement, Employee knowingly and voluntarily releases, acquits and forever discharges Berlex and its Related Persons from any and all charges, complaints, *claims*, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses of any nature whatsoever, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, which from the beginning of the world up to and including the Termination Date, exist, have existed, or may arise from any matter whatsoever occurring, including, but not limited to, any claims arising out of or in any way related to Employee's employment with

Berlex and the conclusion thereof, which Employee . . . ever had, now has or at any time hereafter may have, own or hold against Berlex or its Related Persons. By executing this Separation Agreement, employee is waiving all claims against Berlex and its Related Persons arising under common law, any federal, state or local laws of any state. . . ." (Emphasis supplied.)

In exchange for these promises by Mills, Berlex agreed to pay and did pay Mills the equivalent of one year's salary as severance pay, paid in semi-monthly installments, a $5,388 bonus and five days vacation pay. Berlex also paid Mills' COBRA payments and provided him with unlimited outplacement services for a one-year period.

On June 6, 1996, Mills filed this action against Berlex and sought short-term disability benefits. *Held*:

"In a bench trial the judge sits as trier of fact, and his findings are analogous to the verdict of a jury. As we have observed, they should not be disturbed if there is any evidence to support them. We do not, on appeal, blindly accept the evidence of any party to the litigation or determine the merits of the case from a point of advocacy. Rather we follow the rule that where the trial court finds the facts and enters judgment thereon, the sole question for determination is whether there is any evidence to authorize that judgment. *All-Phase Elec. &c. Co. v. Transamerican Ins. Co.*, 162 Ga. App. 104, 105 (290 SE2d 208) (1982); *Exxon Corp. v. Butler*, 173 Ga. App. 146, 147 (325 SE2d 806) (1984), cert. denied. It is our duty to construe the evidence to uphold the judgment rather than upsetting it. Even though the findings of fact and conclusions of law contended by an appellant may have been, in whole or in part, authorized by the evidence presented at trial, yet, where the facts found by the trial court were authorized by the evidence, such findings will not be set aside. In the absence of legal error, an appellate court is without jurisdiction to interfere with the judgment supported by some evidence. Id." *Alonso v. Hosp. Auth. of Henry County*, 175 Ga. App. 198, 203 (7) (332 SE2d 884).

Mills contends the trial court erred when it found his civil action was barred because the parties did not contemplate that Berlex would deny his short-term disability claim at the time they entered into the general release. Under New Jersey law,[1] "[t]he scope of a

---

[1] The release provides that it "will be governed by and construed under the laws of the State of New Jersey." In the absence of contrary public policy, our courts normally will enforce a contractual choice of law provision, *Carr v. Kupfer*, 250 Ga. 106, 107 (1) (296 SE2d 560), as the parties by contract may stipulate that the laws of another jurisdiction will govern the transaction. *Wallace v. Harrison*, 166 Ga. App. 461, 462-463 (1) (304 SE2d 487). A choice of law provision in a contract does not, however, govern the procedural law applied in the forum state. See *Lloyd v. Prudential Securities*, 211 Ga. App. 247, 248 (1) (438 SE2d 703).

release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances. A general release, not restricted by its terms to particular claims or demands, ordinarily covers all claims and demands due at the time of its execution and within the contemplation of the parties. [Cits.]" *Bilotti v. Accurate Forming Corp.*, 188 A2d 24, 35 (N. J. 1963).

We find the evidence authorized the trial court's conclusion that Mills' claim for short-term disability benefits fell within the scope of the release. By its terms, the release applies to all claims "arising out of or in any way related to [Mills'] employment with Berlex and the conclusion thereof. . . ." It also specifically provided that Mills "will not be eligible to participate in any of Berlex's benefit plans" as of the day following his termination date (February 28, 1995). This language is sufficient to include Mills' claim for short-term disability benefits.

Mills' contention that the parties did not contemplate a release of his claim for short-term disability benefits when they entered into the general release is without merit. Mills retained counsel to review the release, and the record shows that both Mills and his attorney were aware of his short-term disability claim before Mills signed the Separation Agreement and General Release. These "facts and circumstances," taken together with the plain language of the release, support the conclusion that Mills' short-term disability claim was "within the contemplation of the parties" at the time they entered into the release. *Bilotti v. Accurate Forming Corp.*, 188 A2d 24, 35, supra.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED JANUARY 5, 1999.

*Samuel W. Cruse*, for appellant.
*Constangy, Brooks & Smith, Kelly J. Beard*, for appellee.