A03A0320. NETHERLAND et al. v. NELSON.
(583 SE2d 478)

ADAMS, Judge.

This case involves an ongoing legal battle over rights to a well and small water system serving only fourteen users at a development located on about one acre of land. Shortly after the trial court determined that Donald Nelson owned the system and that the other users were required to pay their share of the reasonable cost of operating the system, one user, Olin Netherland, drilled his own well. In response, Nelson sought declaratory and injunctive relief and damages. After an evidentiary hearing, the trial court held that Netherland's actions violated the county zoning ordinance and the perpetual covenants of the community. Netherland appeals.

[T]he appellate standard of review for nonjury trials of disputed material facts is the clearly erroneous test, also known as the "any evidence" rule. As such, the sole question for determination on appeal is whether there is any evidence to authorize the trial court's judgment. It is our duty to construe the evidence to uphold the judgment rather than upsetting it. This is true regardless of whether evidence also existed that may have supported [appellants'] position. In the absence of legal error, an appellate court is without

jurisdiction to interfere with a judgment supported by some evidence.

(Citations, punctuation and emphasis omitted.) *Progressive Preferred Ins. Co. v. Aguilera*, 243 Ga. App. 442, 445-446 (2) (533 SE2d 448) (2000). See also *Banks County v. Cornett Bridge, Inc.*, 247 Ga. App. 449, 450 (544 SE2d 457) (2000).

Construing the evidence to uphold the judgment shows that Pine Harbor Subdivision in McIntosh County is a small development that used to be a fishing camp. A well on the property serves all 13 residences and the marina. In an earlier part of the litigation, based on certain easements and covenants, the trial court held that Nelson was the sole and exclusive owner of the water system, that he was authorized to assess a reasonable cost for providing the water service, and that each owner was obligated to pay the assessment. The issue of damages and the litigation itself remained pending.

Shortly thereafter, on October 19, 2001, Netherland, who owned one of the residences, applied for a permit to drill a well on his property, which was only 8,500 square feet in size. With certain exceptions not at issue here, the applicable county zoning ordinance prohibited owners of lots measuring less than 20,000 square feet from having wells on their property.

In response to Netherland's application, both the county building inspector and the county health inspector got involved. When Robert Pontella, the health inspector, investigated the application, Netherland gave him the impression that the new well was to be a replacement well, and that, except for the original well owner's home, the new well would serve all the homes on the one-acre tract — an area much larger than required by the zoning ordinance. Neither the health inspector nor the building inspector looked into compliance with the minimum area regulation of the zoning ordinance any further, and the well permit was issued.

On October 19, 2001, Nelson saw people and well-drilling equipment on the Netherland property, and he called Pontella that day to object to the well because it violated the zoning ordinance. He told Pontella that he had made a mistake in allowing the permit, and he asked him to tell the people on site. Pontella agreed that he had made a mistake. Later that day, Nelson saw Pontella at the site talking to the crew, and he assumed that the matter was under control.

To Nelson's surprise, on October 22 and 23, a Monday and Tuesday, a new well was drilled. On Friday, October 26, at 9:35 a.m., Nelson filed a petition in the ongoing litigation seeking injunctive relief, a declaratory judgment, and damages.

After an evidentiary hearing, the trial court ruled that the new well did not comply with the zoning ordinance, the well permit was

issued in violation of the zoning ordinance, and the covenants associated with the water system easements were perpetual in nature and therefore Nelson would be damaged by Netherland's actions. The court entered an order enjoining Netherland from maintaining, possessing, or operating a private well within the confines of the Pine Harbor Subdivision.

1. Netherland first contends that Nelson is barred from relief by the doctrine of laches. He contends that because Nelson was aware of the drilling equipment on October 19 but failed to take legal action to stop the drilling that occurred on October 22 and 23, he is precluded from seeking a remedy.

"A trial court enjoys discretion in determining whether, under the facts of the case, laches applies, and this Court will not disturb such determination absent abuse of discretion." *Dillard v. Bishop Eddie Long Ministries*, 258 Ga. App. 507, 511 (5) (574 SE2d 544) (2002). Although the trial court did not mention laches in its order, the issue was raised and implicitly overruled by the order.

> In determining the viability of a laches defense, the trial court should consider the length of the delay, the sufficiency of the excuse, the loss of evidence on disputed matters, the opportunity for the claimant to have acted sooner, and whether the plaintiff or defendant possessed the property during the delay. The defendant must show prejudice from the delay.

(Citations omitted.) *Ajayi v. Williams*, 248 Ga. App. 325, 330 (1) (d) (546 SE2d 537) (2001).

Here, there was only a three- or four-day delay from the drilling of the well until the petition was filed. Further, until the drilling actually began, Nelson understood that the matter had been resolved. Finally, there is evidence that Netherland had unclean hands because he misled the health inspector in order to obtain the permit. We find no abuse of discretion by the trial court.

*Springtime, Inc. v. Douglas County*, 228 Ga. 753 (187 SE2d 874) (1972), upon which Netherland relies, is not controlling. In that case, Douglas County had knowledge of all the facts when it issued a permit to the defendant to build a mobile home park even though the development violated county zoning regulations, and there was no evidence that the defendant misled the county to obtain the permit. And the county failed to seek judicial redress for three and one-half months during which time the defendant spent more than $100,000 in reliance on the county-issued permit. Id. at 755-757 (2).

2. Netherland also contends that because he drilled the well based on having obtained the well permit, he has a vested right to

the well under *Barker v. County of Forsyth*, 248 Ga. 73 (281 SE2d 549) (1981). Netherland contends that *Barker* stands for the proposition that "actual issuance of a building permit vests zoning rights even in the absence of a showing of reliance on the permit." Netherland misconstrues *Barker*. The relevant language of that case states, "where a *valid* building permit is issued no showing of substantial reliance is necessary to vesting of rights." (Citation omitted; emphasis supplied.) Id. at 76 (2). Here, the trial court specifically found that the permit was issued in violation of the zoning ordinance. Furthermore, as stated above, there is evidence that Netherland misled the health inspector in order to obtain the permit.

Netherland also relies on *Schulman v. Fulton County*, 249 Ga. 852 (295 SE2d 102) (1982), for the rule that issuance of a permit vests rights, especially where the applicant for the permit has expended money in reliance thereon. But again, in that case there is no evidence that the initial permit was invalid nor that the applicant misled the county into issuing the permit.

In its ruling, the trial court followed the correct law. "The issuance of a building permit results in a vested right only when the 'permit has been legally obtained and is valid in every respect,' *Keenan v. Acker*, 226 Ga. 896 (178 SE2d 196) (1970), and has been 'validly issued.' *Barker*, [248 Ga. at 75]." *Matheson v. DeKalb County*, 257 Ga. 48, 49 (3) (354 SE2d 121) (1987). In this case, the building inspector and the health inspector admitted that the permit was issued without regard to the minimum square footage requirement. And the health inspector was operating on the mistaken belief that the well was a replacement well for the entire development. Finally, the health inspector admitted that Nelson advised him that the well did not meet the square footage requirement. We find no error in the trial court's ruling.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JUNE 3, 2003 —
RECONSIDERATION DENIED JUNE 19, 2003.

*Hugh J. McCullough*, for appellants.
Donald O. Nelson, *pro se*.